# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2687

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MYRON A. WALLACE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 03 CR 9—**John Daniel Tinder**, *Judge.*

_____

ARGUED DECEMBER 9, 2003—DECIDED JANUARY 23, 2004

_____

Before FLAUM, *Chief Judge*, and BAUER and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* This decision considers when action by an administrative agency goes far enough to be considered a "prior specific judicial or administrative order, injunction, decree or process" under U.S.S.G. § 2B1.1(b)(7)(C) to merit a two-level enhancement in a defendant's sentence. We considered this matter in light of the sparse existing case law and determined that a "Statement of Voluntary Discontinuance" made by the defendant at the behest of the U.S. Postal Inspection Service ("USPIS") does not rise to such a level. For the reasons outlined below, we reverse the district court's decision.

## I. Background

Myron Wallace was not a very good business person. He ran into trouble when he engaged in a series of transactions via US mail to purchase telecommunications equipment. Wallace paid for the equipment with bad checks. After his first such transaction, Wallace was contacted by the USPIS. He met with an inspector at the USPIS offices in May 2002 where he was told that his behavior was unlawful and arrangements were made to settle Wallace's debts to the company from which he purchased the equipment. At this time he signed a "Statement of Voluntary Discontinuance" prepared by the USPIS, which was basically a promise by Wallace that he would not engage in similar fraudulent behavior in the future.[1]

This promise did not improve Wallace's behavior. Less than a year later, on March 26, 2003, Wallace pleaded guilty to seven counts of mail fraud. During the sentencing hearing, the district court applied a two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(7). This section of the Sentencing Guidelines states, "[i]f the offense involved . . . a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed else-where in the guidelines . . . increase by 2 levels." In de-

---

[1] The Statement provided in part,

> I, Myron A. Wallace, . . . have been informed . . . [that] failing to provide good[s], funds or services through the U.S. Mails could constitute a violation of the Mail Fraud Statute. . . .

> I hereby agree to voluntarily discontinue and permanently cease and desist, directly or indirectly, under the name of MWC Consulting, any variation of that name, or through any corporate or other device, any representation, practice or conduct in which I may have been involved, in violation of the above described statutes.

(Br. for Appellee at app. 1.)

ciding to apply this enhancement, the district court judge explained that he used a "broad reading" of this section of the Sentencing Guidelines. (Br. for Appellant at app. 17).

Wallace now appeals, contending that the Statement he made to the USPIS was too informal to fall under U.S.S.G. § 2B1.1(b)(7)(C).


## II.  Analysis

We review de novo the district court's interpretation of a sentence enhancement under the Federal Sentencing Guidelines. *United States v. Carroll*, 346 F.3d 744, 747 (7th Cir. 2003).

In this case, the applicable provision of the Sentencing Guidelines encompasses actions by administrative agencies (such as the USPIS) that can be classified as an "order, injunction, decree or process." The question is whether Wallace's "Statement of Voluntary Discontinuance" falls under one of these categories; specifically, whether it is a "process."

There is very little case law to guide our analysis. In *United States v. Mantas*, 274 F.3d 1127, 1133 (7th Cir. 2001), the sole Seventh Circuit opinion to consider this issue, we held that "informal process" on the part of an agency could be considered "process" for the purposes of U.S.S.G. § 2B1.1(b)(7)(C) when it resulted in the issuance of an "informal decree."[2] In that case we held that a meat wholesaler selling meats from a cooler that the Illinois Department of Agriculture had "seized" constituted a violation of a prior administrative process. Specifically, the

---

[2]  In analyzing the issue, we considered, "[t]he two circuits that have addressed it in other contexts are somewhat split over what constitutes official process." *Id.*

Department of Agriculture ("USDA") had verbally told the wholesaler that he could not sell the meat, and told him they had "seized" all the meat by placing a red tag on the cooler; we described this as an informal administrative procedure that resulted in an "informal decree" and as such was an administrative action that was sufficient as a process. *Id.* at 1129-30, 1133.

Similarly, the Second Circuit found that an agreement arrived at after extensive negotiations did constitute administrative process. *United States v. Spencer*, 129 F.3d 246 (2d Cir. 1997). In that case, the United States Department of Transportation ("DOT") made a businessman submit a sworn affidavit that he would have no involvement in an financially troubled airline prior to granting the airline a "certificate of public convenience and necessity"; the businessman signed the affidavit, but then did work for the airline anyhow. The court noted that "[w]hile there was no formal adversary 'proceeding' before the DOT resulting in a formal administrative 'order' or 'decree,' there was an *extensive negotiation* with the DOT, *culminating in an agreement* . . . ." *Id.* at 252 (emphasis added).

Conversely, the Ninth Circuit found that mere administrative warnings did not rise to the level of an "administrative process" in *United States v. Linville*, 10 F.3d 630 (9th Cir. 1993). That case involved a woman who conned pet owners into giving her their pets under the pretenses that she wanted to adopt the pets, while instead, she sold them to medical research facilities. There, the USDA sent both warnings and a letter notifying the woman of the current regulations prohibiting her behavior. In holding the sentencing enhancement did not apply, the Ninth Circuit explained that "the Sentencing Commission did not intend to subject every recipient of relatively informal missives and official notifications and warnings of violations from administrative agencies to the extra penalties designed for

people with 'aggravated criminal intent.'" *Id.* at 633. The court went on to say that if the enhancement was warranted where such warnings had been issued, it "would compel enhancements in every criminal case where a defendant knew or was told by someone in authority that what she was doing was illegal, rather than limiting them to more relatively unusual cases where someone violated a specific court or agency order or adjudication." *Id.* at 632-33.

In considering whether Wallace's "Statement of Voluntary Discontinuance" made to the USPIS is in fact "administrative process," we note that unlike *Spencer*, there were no "extensive negotiations" prior to Wallace's signing the prepared statement. Nor was there official action taken by the USPIS like the seizure of meat in *Mantas*. We find that Wallace's statement was much more informal than an administrative "order, injunction, decree or process," rather, his situation is more akin to the warning letters (not accompanied by any process) considered in *Linville*. *Linville* warned against applying the enhancement to every situation where "a defendant knew or was told by someone in authority that what she was doing was illegal." *Linville*, 10 F.3d at 632-33. To paint a clearer picture, we see Wallace's situation more resembling that of a driver receiving a warning from a police officer after being caught speeding. In this situation, like Wallace, the driver knows she has violated a traffic law, she knows that if she speeds in the future she will be violating the law, and our driver will most likely have agreed to the officer's request that she "slow it down" and not violate the posted speed limits in the future. In cases of these informal warnings, the driver cannot be doubly fined the next time she is stopped and issued a ticket. The same is true of the USPIS actions concerning Mr. Wallace. Without having engaged in something more substantial than preparing a "Statement of Voluntary Discontinuance", we cannot hold that Wallace is subject to the sentence enhancement in U.S.S.G. § 2B1.1(b)(7)(C).

Finally, it is worth noting that the district court placed considerable emphasis on whether Wallace's Statement could be considered an "agreement" under 39 C.F.R. § 952.3. (Br. for Appellant at app. 16.) This section of the C.F.R. provides the Postal Service authority to use "informal" methods to dispose of matters, namely, "agreement[s] between the parties." We agree with the district court that while an agreement may be considered "informal process" by the USPIS, we disagree that all types of "informal process" rise to the level of "process" under U.S.S.G. § 2B1.1(b)(7)(C). This is an erroneous inference that the district court judge drew from our opinion in *Mantas*.[3] Although we found in *Mantas* that the informal process (the placing of a red tag on the meat cooler) was sufficient, we did not conclude that *all* actions classified as "informal process" would be sufficient.[4] These are fact patterns that must be examined on a case-by-case basis. Based on our analysis, Wallace's "Statement of Voluntary Discontinuance," without any other type of procedure (such as the extended negotiations in *Spencer*), does not rise to such a level.

We reverse the judgment of the district court and remand this case for sentencing consistent with this opinion.

---

[3] The district court judge explained, "I believe the cases made clear that an informal process and an informal decree are sufficient to trigger application of the two-level enhancement . . . . And I think *Mantas* in the Seventh Circuit makes that abundantly clear." Br. for Appellant at app. 16.

[4] In *Mantas* we explained that aside from finding that violation of an injunction merited the enhancement, "[w]e have had no occasion to discuss what other sorts of process could trigger the sentencing enhancement." *Mantas*, 274 F.3d at 1132.

A true Copy:

    Teste:

                             _____
                             *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*