**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Andrew GROSS, Defendant–Appellant.**

**No. 02–1981.**

United States Court of Appeals, Sixth Circuit.

Dec. 5, 2003.

Jennifer M. Gorland, U.S. Attorney's Office, Detroit, MI, for Plaintiff–Appellee.

Melvin Houston, Detroit, MI, Andrew Gross, pro se, Cumberland, MD, for Defendant–Appellant.

Before MARTIN and MOORE, Circuit Judges; and MCKEAGUE, District Judge.*

*ORDER*

Andrew Gross, represented by counsel, appeals his judgment of conviction and

---

* The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

sentence. The parties have expressly waived oral argument, and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2002, a jury found Gross guilty of seven counts of mail fraud in violation of 18 U.S.C. § 1341, six counts of credit card fraud in violation of 18 U.S.C. § 1029(a)(2), and one count of identity theft in violation of 18 U.S.C. § 1028(a)(7). The court sentenced him to a total of eighty-four months of imprisonment.

Gross has filed a timely appeal. In his appellate brief, Gross's counsel asserts the following issues for review: 1) whether the court improperly admitted evidence of Gross's involvement in other uncharged crimes; and 2) whether the district court correctly determined the amount of loss attributable to Gross. In a pro se supplemental brief, Gross argues that he was improperly sentenced because: 3) the court failed to ascertain that he had read and discussed the presentence investigation report (PSI) with counsel; 4) the probation department used false information to prepare his presentence report; 5) his criminal history was improperly calculated as a category V rather than III; 6) the amount of loss was overstated because the amount at trial was $82,133; 7) the district court failed to consider diminished capacity as a basis for a departure; 8) Gross was not competent to stand trial because of the need for medical treatment; and 9) the above errors establish that Gross's counsel rendered ineffective assistance.

Upon review, we conclude that the district court properly admitted evidence of two uncharged "slip and fall" claims. This court employs a three-step analysis in reviewing a district court's decision to admit evidence of "other crimes, wrongs, or acts" under Fed.R.Evid. 404(b). *See United States v. Spikes,* 158 F.3d 913, 929 (6th Cir.1998). We review the district court's factual finding that the "other acts" occurred under the clearly erroneous standard. *See id.* We review de novo the district court's finding that the evidence was admissible for a legitimate purpose. *See id.* Finally, we review the district court's conclusion that the probative value of the "other acts" evidence is not substantially outweighed by its unfairly prejudicial effect under the abuse of discretion standard. *See id.* While evidence of other crimes is not admissible to prove the character of the defendant, the evidence may be admissible to establish proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Fed.R.Evid. 404(b). We take a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred in admitting the evidence only if the latter outweighs the former. *See United States v. Sassanelli,* 118 F.3d 495, 498 (6th Cir.1997). In reviewing the other acts evidence, the court considers: 1) whether the other acts evidence was unduly prejudicial; 2) the availability of other means of proof; 3) when the other acts occurred; and 4) whether the district court gave a limiting instruction. *See United States v. Brown,* 147 F.3d 477, 483 (6th Cir.1998).

The district court properly admitted the "other acts" evidence. First, we note that Gross does not argue that he did not actually submit claims for the "other" slip and fall incidents. Second, the court properly concluded that the "other acts" were admissible for a legitimate purpose. The uncharged claims were introduced because they involved slip and falls that allegedly occurred on the same day as the two slip and fall claims charged in counts 1 and 13 of the indictment. The claims each involved an identical slip and fall that allegedly occurred at different stores on the same day and using the same medical records to substantiate the claim. The dis-

trict court permitted the government to introduce the evidence because it agreed that the claims were admissible to show an absence of mistake and to prove motive, plan, and identity.

Finally, the prejudicial effect of the evidence of Gross's involvement with the other slip and fall claims did not outweigh its probative value. While the evidence was undoubtedly prejudicial to Gross, the evidence was highly relevant to establishing Gross's motive, plan, and knowledge in carrying out his scheme to obtain insurance settlement proceeds by using identical medical records to establish more than one claim. It also demonstrates his history of committing insurance fraud and his particular modus operandi. Moreover, the slip and fall claims occurred on the same day as two of the charged claims.

Nonetheless, even if the district court erred when it admitted this evidence, the error was harmless because there was ample evidence to support Gross's conviction. *United States v. Daniel,* 134 F.3d 1259, 1262 (6th Cir.1998). The evidence of Gross's guilt included his fingerprints on documents found in the insurance files for the slip and fall claims. Moreover, the jury acquitted Gross of three counts of mail fraud and convicted him of the remaining seventeen counts, which indicates that the jury followed the district court's instruction to carefully consider each charge separately.

The district court also properly determined the amount of loss attributable to Gross. The determination of the amount of loss is a finding of fact that will not be disturbed unless clearly erroneous. *United States v. Guthrie,* 144 F.3d 1006, 1011 (6th Cir.1998). However, the question of whether the amount of loss should be determined on the basis of the actual or intended loss is a question of law and is subject to de novo review. *United States v. Brown,* 151 F.3d 476, 489 (6th Cir.1998).

The Application Notes state that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." *See* USSG § 2B1.1, comment. (n.2(A)). Sentencing courts should use the loss that was intended if that loss is greater than the actual loss that can be determined. *United States v. West Coast Aluminum Heat Treating Co.,* 265 F.3d 986, 991 (9th Cir.2001). The total loss amount may include both actual and intended losses where the fraud involved both successful and ultimately unsuccessful attempts. *United States v. Brown,* 151 F.3d at 489–90.

■ Here, a review of the record reflects that Gross's scheme involved both successful attempts to defraud insurance companies through claim settlements and ultimately unsuccessful attempts at defrauding insurance companies. In each of the unsuccessful attempts, Gross made a settlement demand or claimed medical expenses, that totaled $11,652. This additional amount was properly included in the calculation of the loss amount precisely because Gross intended to obtain the monies.

Finally, we conclude that Gross's pro se argument challenging his sentence lacks merit. First, a review of the record reflects that Gross acknowledged that he had received a copy of the PSI and that he had reviewed it with his attorney. Second, the record reflects that the probation department did not use false information in preparing the report, and Gross has not presented any evidence that any of the information was indeed false. Third, Gross waived his challenge to the calculation of his Criminal History Category score by specifically withdrawing his objection to the determination that he had a score of V. Fourth, for the reasons stated above, the district court properly determined the total amount of loss attributed to Gross's

scheme to defraud insurance companies. Fifth, Gross has not pointed to anything in the record which even remotely suggests that he was entitled to a "diminished capacity" reduction. Sixth, Gross did not establish that he was incompetent to stand trial based on his need for medical care, because the record clearly reflects that his request was based on elective surgery for removal of a keloid near his ear, and that the treatment was not medically necessary. Finally, because Gross's underlying arguments lack merit, he did not establish that counsel had rendered ineffective assistance.

Accordingly, we affirm the district court's judgment.